UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

William Clement Beals,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Rick Harry, Chief Operating Officer; Anita Schlank, Clinical Director; Jim Lund, Unit Director; Lori Parkos, Security Guard; Sue Eceles, Security Guard; Arlene Gresczyk, Security Guard; Kathy Jokimaki, Security Guard; and Kathy Ford, Security Guard,

Defendants. Civ. No. 01-1664 (PAM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 24th day of July, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Dismiss. The Plaintiff appears pro se, and the Defendants appear by David A. Rowley, Assistant Minnesota Attorney General. For reasons which follow, we recommend that the Defendants' Motion to Dismiss be granted.

(21)

FILED JUL 24 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Factual and Procedural History

The Plaintiff is currently a civilly committed patient in the Minnesota Sex Offender Program ("Program"), in Moose Lake, Minnesota. See, Complaint, at ¶2. Each of the named Defendants is employed in the program, by the State of Minnesota, and are sued in their individual and official capacities. Id. at ¶¶3-10. In his Complaint, the Plaintiff alleges that the Defendants have violated his rights under the Fourteenth Amendment to the United States Constitution, and have violated the protections of the Constitution of the State of Minnesota, as well as unspecified State and Federal laws. Id. at ¶¶30-34. The Plaintiff's claim arises from a series of events, which occurred between July 18, 2001, and August 27, 2001.

According to the Plaintiff, on July 18, 2001, he was called to a Disciplinary Hearing by the Defendants Lori Parkos ("Parkos"), Sue Eceles ("Eceles"), and Arlene Gresczyk ("Gresczyk"). Id. at ¶12. At that time, they accused him of theft, and fraud, for stealing another resident's food from the refrigerator unit. Although, apparently, the Plaintiff denied the theft, and informed the Defendants that the complaining resident had given him the food, they advised him that he would receive a punishment of two days, at "Level A restrictions," for each offense. Id. at ¶¶12-13. The Plaintiff relates that "Level A restrictions" would allow him

to leave his sleeping room, for ten minutes out of every hour, but would require him to forfeit all other institution liberties during the pendency of the restrictions. Id. at ¶12.

Later, on July 26, 2001, the Plaintiff was approached by the Defendant Kathy Ford ("Ford"), who informed him that she would start the process for reducing the Plaintiff's security rating, because she had overheard the Plaintiff make unflattering remarks about the Program, on several occasions, which she characterized as "treatment bashing." Id. at ¶14. Thereafter, on July 27, 2001, the Defendant Kathy Jokimaki ("Jokimaki") filed out the form to reduce the Plaintiff's security level from 1B to 1A, and the "Notification of Security Decrease" was placed in the Plaintiff's mailbox. The Plaintiff did not receive a Hearing on the reduction. Id. at ¶15.

On July 29, 2001, the Plaintiff filed an individual grievance, with the Defendant Jim Lind ("Lind"), in which he inquired about the nature of the offenses that were used to reduce his security level. Id. at ¶16. On August 1, 2001, Lind affirmed the reduction. Id. at ¶17. The Plaintiff appealed the decision on August 5, 2001, to the Defendant Rick Harry ("Harry"). Id. at ¶18. Harry affirmed the Plaintiff's security level reduction on August 6, 2001. Id. at ¶20.

On August 5, 2001, the Plaintiff also filed an institutional grievance, in which he complained about unequal treatment. Id. at ¶19. Specifically, he alleged that individuals, who had been sanctioned for sexually acting out on a number of occasions -- which he claims is a more serious offense -- did not receive a security level reduction. Id. at ¶21. Lind denied the Plaintiff's grievance on August 6, 2001, and informed the Plaintiff that his belief was a "thinking error." Harry affirmed that decision on August 14, 2001. Id. at ¶¶21, 24.

Similarly, on August 8, 2001, the Plaintiff filed a grievance, in which he complained about unequal treatment, because another resident had been found guilty of a media violation -- specifically, possession of a photograph of a nude male child -- but he did not have his security rating reduced. Id. at ¶22. Rather, he was apparently only placed on "Level A restrictions." Id. The outcome of that particular grievance is unclear.

On August 20, 2001, the Plaintiff filed a grievance with Lind, in which he complained that he had not been afforded due process in his Disciplinary Hearing. Id. at ¶24. Lind denied the grievance, and the Plaintiff appealed to Harry. Id. at ¶¶24-25. Harry affirmed that decision on August 27, 2001. Id. at ¶26.

As a result of the foregoing, the Plaintiff alleges that the Defendants have denied his right to due process, and equal protec-

tion of the laws.[1] Specifically, he complains that he was punished, without being provided an opportunity to prepare a defense, or to call witnesses, and without a Hearing by an impartial decision maker. Id. at ¶¶30-31. He also complains that, without the benefit of a Hearing, the Defendants reduced his security rating, which also violated his right to due process of law. Id. at ¶32. Finally, he asserts that he was sanctioned for a violation of an institutional rule, even though he was not provided fair notice of the rule, and that no institutional rule actually forbade his conduct, thereby violating his right to due process. Id. at ¶¶33-34.

As a result, he requests declaratory and injunctive relief, including a requirement that the Defendants "submit within 90 days

[1]The Plaintiff's Complaint consists of the form "Complaint for Violation of Civil Rights Under 42 U.S.C. Sec. 1983," to which he has attached a more individualized Complaint. Docket No. 1. On the same day that he filed his Complaint -- that is, on September 10, 2001 -- the Plaintiff also filed a "Memorandum in Support of Complaint for Violation of Civil Rights Under 42 U.S.C. §1983," along with a number of exhibits. Docket Nos. 2 and 3. In his form Complaint, the Plaintiff claims that the Defendants denied him the equal protections of the law but, in his more individualized Complaint, he failed to enunciate a violation of his right to equal protection as one of his causes of action. Complaint, at ¶¶30-34. Moreover, in his "Memorandum in Support of Complaint for Violation of Civil Rights Under 42 U.S.C. §1983," he does not mention a claim of equal protection. Nonetheless, because some of the facts, that the Plaintiff asserts in the individualized Complaint, could be indulgently construed as a claimed violation of his right to equal protection, Complaint, at ¶¶21-22, we will construe it as such. See, e.g., Estelle v. Gamble, 429 U.S. 97, 106 (1976)(holding that, when considering a pro se litigant's pleading, a Court must liberally construe its allegations).

of this court's order a disciplinary criteria that is equal to or exceeds the protections of convicted criminals in an institutional disciplinary hearing." Id. at IX. He also seeks $30,000.00 in compensatory damages from the Defendants, jointly and severally, and $30,000.00, in punitive damages, from each of the Defendants. Id. Finally, he seeks an Order expunging the allegation of theft from his record, and the reinstitution of his 1B security rating status. Id.

## III. Discussion

The Defendants claim that the Plaintiff's Complaint should be dismissed, for lack of subject matter jurisdiction, under Rule 12 (b)(1), Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted, under Rule 12(b)(6). We take each argument in turn, starting with the Defendants' assertion that this Court lacks jurisdiction to entertain some of the Plaintiff's claims.

### A. The Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

The crux of the Defendants' challenge to our subject matter jurisdiction is that the Eleventh Amendment of the United States Constitution extends, to them, sovereign immunity from suit. Accordingly, our analysis starts with a consideration of the relevant Eleventh Amendment jurisprudence.

1. Standard of Review. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. For over a century, the Amendment has been understood to stand for the proposition, that a non-consenting State is immune from Federal Court suits by its own citizens, as well as by citizens of another State. See, Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72 (2000); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 13 (1890)(concluding that such suits "were not contemplated by the Constitution when establishing the judicial power of the United States"). The Eleventh Amendment immunizes from suit a "state agency or a state official * * * if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'" Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996), quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123 n.34 (1984); see also, Regents of the University of California v. Doe, 519 U.S. 425 (1997); Edelman v. Jordan, 415 U.S. 651 (1974).

Over the years, the Supreme Court has fashioned a patchwork of exceptions to the Eleventh Amendment's limitation on Federal Court jurisdiction, as initially interpreted in Hans. Under the doctrine of Ex parte Young, 209 U.S. 123 (1908), a Federal Court retains jurisdiction, notwithstanding the Eleventh Amendment, to direct State officials to conform their practices to the requirements of Federal law, even though such an injunction might have collateral effects upon a State Treasury. See, Edelman v. Jordan, supra at 667-68; Milliken v. Bradley, 433 U.S. 267, 289 (1977). But such an exercise of jurisdiction does not extend to the award of retroactive relief, which requires the payment of funds from the State Treasury. See, Edelman v. Jordan, supra at 667-68. Thus, the Eleventh Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, as well as State Agencies, because such lawsuits are essentially "for the recovery of money from the state." Ford Motor Co. v. Department of the Treasury, 323 U.S. 459, 464 (1945), overruled on other grounds, Lapides v. Board of Regents of the University System of Georgia, --- U.S. ---, 122 S.Ct. 1640, 1645-46 (2002); see also, Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)("[N]either a State nor its officials acting in their

official capacities are 'persons under §1983'" when sued for damages).[2]

The Supreme Court has recognized, however, that a question might arise, in certain cases, as to whether a suit is, in fact, a suit against a State, such as when a claim is only brought against State officials, and not against the State itself. See, Pennhurst State Sch. & Hosp. v. Halderman, supra at 100. In considering this question, the Court started with the well-established principle, that the "Eleventh Amendment bars a suit against state officials when 'the state is the real substantial party in interest.'" Id., at 101. As such "[t]he general rule is that relief sought nominally against the officer is in fact against the sovereign if the decree would operate against the latter," Hawaii v. Gordon, 373 U.S. 57, 58 (1963), and such a suit "is barred regardless of whether it seeks damages or injunctive relief." Pennhurst State Sch. & Hosp. v. Halderman, supra at 101, citing Cory v. White, 457 U.S. 85, 91 (1982).

---

[2]Congress may abrogate a State's Eleventh Amendment immunity, if its intent to do so is "unmistakably clear in the language of the statute." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000); see also, Dellmuth v. Muth, 491 U.S. 223, 228 (1989); Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). It is firmly established, however, that Congress did not abrogate the States' Eleventh Amendment Immunity through enactment of the Civil Rights Act of 1871. See, Quern v. Jordan, 440 U.S. 332, 338-45 (1979).

The Court, in Pennhurst, also limited some of the exceptions that were carved out in prior cases. There, the Supreme Court was first faced with the issue of whether a claim, that certain State officials had violated State law, was a suit against the State, and therefore, barred by the Eleventh Amendment. Id. The Court recognized that the rules permitting prospective relief, but barring a retrospective remedy, for the violation of Federal law by State officials who were acting in their official capacity, were "the culmination of efforts by this Court to harmonize the principles of the Eleventh Amendment with the effective supremacy of rights and powers secured elsewhere in the Constitution." Id. at 105, citing Perez v. Ledesma, 401 U.S. 82, 106 (1971). However, the Court concluded as follows:

> This need to reconcile competing interests is wholly absent * * * when a plaintiff alleges that a state official has violated state law. In such a case the entire basis for the doctrine of Young and Edelman disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

Id. at 106.

As a consequence, the Supreme Court held that the exceptions created by Ex parte Young, and Edelman, to Eleventh Amendment immunity, were inapplicable to suits brought by plaintiffs who alleged that a State official had violated State law, and that suits "against state officials for retroactive monetary relief, whether based on federal or state law, must be brought in state court." Id. at 122. Likewise, the Court concluded that it lacked jurisdiction to enjoin State officials, on the basis of State law, or to order that State officials comply with State law. Id. at 106.

2. Legal Analysis. Here, the Plaintiff seeks monetary damages against the Defendants, in both their individual and official capacities, for alleged violations of Federal and State law. It is clear, however, under the Supreme Court's holding in Pennhurst, that we lack subject matter jurisdiction to consider the Plaintiff's claims for retroactive monetary damages, which arise from acts that the Defendants took in their official capacities -- which is essentially a claim against the State -- regardless of whether those claims are based on State, or Federal law. The State has not waived its Eleventh Amendment immunity from suit and, as the Plaintiff's claims would "impose a liability which must be paid from public funds in the state treasury," the claims are barred by the Eleventh Amendment. See, Edelman v. Jordan, supra at 663.

Therefore, we recommend that the portion of the Defendants' Motion, which seeks the dismissal of the Plaintiff's claims for money damages against the Defendants, for acts they committed in their official capacities, be dismissed, regardless of whether the Plaintiff's claims are founded in State, or Federal law.

The Defendants have not sought the dismissal of the Plaintiff's remaining Federal claims, on lack of subject matter jurisdiction grounds, and we plainly have jurisdiction to consider those claims. Thus, only the Plaintiff's Federal claims for injunctive, and declaratory relief, which arise from the Defendants' acts in their individual or official capacities, as well as the Plaintiff's Federal claims for money damages, which were assertedly caused by the Defendants' acts in their individual capacities, survive the Defendants' Eleventh Amendment defense.

We turn, then, to the Plaintiff's remaining State law claims. While we are uncertain, from the face of the Complaint, whether the Plaintiff does allege a violation of State law, he does assert that the Defendants' actions violated not only the Federal Constitution, but also "the Minnesota State Constitution and current an applicable Federal and State case law." Complaint, at ¶¶30-34. As we are required to interpret the Plaintiff's Complaint liberally, see, e.g., Estelle v. Gamble, 429 U.S. 97, 106 (1976)(holding, in part, that, when considering a pro se litigant's pleadings, a Court must

liberally construe its allegations), we construe his Complaint to allege violations of State law.

To the extent that the Plaintiff is alleging violations of State law, however, those State law claims, in which the Plaintiff seeks declaratory or injunctive relief, as to acts taken by the Defendants in their official capacities, are barred, in Federal Court, by the Eleventh Amendment. As we have noted, in Pennhurst, the Supreme Court held that Federal Courts lack the jurisdiction to order State officials to comply with State law, because there could be no "greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Pennhurst State Sch. & Hosp. v. Halderman, supra at 106. As a pure matter of jurisdiction, we cannot require a State official to comply with State law, or declare that a State official has violated a State law. See, Nicolaison v. Milczark, 26 Fed.Appx. 596, 597, 2002 WL 15669 (8th Cir., January 8, 2002)(affirming District Court's holding that "the Court lacked authority to order defendants to comply with state law."). Therefore, we recommend that the Plaintiff's State law claims for injunctive, or for declaratory relief, be dismissed, insofar as they relate to actions taken by the Defendants in their official capacities.

What remains for discussion, then, are the Plaintiff's State law claims which arise from the acts, which the Defendants took, in their individual capacities, including his claim for damages, and for injunctive and declaratory relief. As to those claims, the general rule is that "[t]he Eleventh Amendment does not bar federal court suits against a state officer in his individual capacity, regardless of the relief sought." Wasson v. Sonoma County Junior College, 4 F. Supp.2d 893, 901 (N.D. Cal. 1997). Here, the Plaintiff has invoked the "pendent" jurisdiction of the Court so as to address the State law claims. Complaint, at ¶1. We assume that the Plaintiff is referring to this Court's supplemental jurisdiction,[3] under Title 28 U.S.C. §1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, under Title 28 U.S.C. §1367(c)(3), a Federal Court may decline to exercise such supplemental jurisdiction when the Court has "dismissed all claims over which it has original jurisdiction." Therefore, since we find, in the following section of this Report

[3]In 1990, Title 28 U.S.C. §1367 was amended to substitute "supplemental" jurisdiction, for "pendant" jurisdiction.

and Recommendation, that the Plaintiff has failed to state a claim, upon which relief can be granted on his Federal actions, we recommend that the Plaintiff's remaining State claims be dismissed without prejudice. Moreover, since the Plaintiff would need to commence a State Court action so as to prosecute the other State law claims, which we have already recommended to be dismissed, judicial efficiency commends a denial of supplemental jurisdiction.

B. The Defendants' Motion to Dismiss for Failure to State a Claim.

The Plaintiff contends that the Defendants' actions, in imposing a punishment upon him, without a Hearing by a impartial decision maker, and without an opportunity to prepare a defense and call witnesses, as well as the reduction in his security rating without the benefit of a Hearing, violated his right to due process of law. The Defendants respond that the Plaintiff's claims must be dismissed because he has failed to identify a particular liberty or property interest, which would trigger the protections of the Due Process Clause. In the alternative, the Defendants argue that, even if the Plaintiff had identified a sufficient liberty or property interest, the imposed restrictions were de minimus, and would still not trigger Due Process Clause protections, or they were not atypical or significant and, as such, did not affect a protected interest. Finally, the Defendants contend that, even if the Plain-