tiff did have a protected liberty or property interest, he has failed, nonetheless, to state a claim because the procedures used by the Operational Team did not violate his Procedural Due Process rights. We will first delineate the appropriate standard of review for this aspect of the Motion to Dismiss, and then turn to the Defendants' assertions.

1. Standard of Review. In reviewing a Complaint under a Rule 12(b)(6) Motion, we must consider all of the facts alleged in the Complaint as true, and construe the pleadings in a light most favorable to the plaintiff. See, e.g., Brotherhood of Maintenance of Way Employees v. Burlington Northern Santa Fe R.R., 270 F.3d 637, 638 (8th Cir. 2001). Thereafter, "[a] complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001). Further, in assessing a Rule 12(b)(6) Motion, the Court must liberally construe a pro se Complaint. See, Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

2. Legal Analysis. As we have already noted, the Plaintiff contends that the Defendants' acts, in imposing a punishment without a Hearing by a impartial decision maker, and without opportunity to prepare a defense and call witnesses, as well as the reduction in his security rating without the benefit of a Hearing, violated his right to due process.[4] Resolving the Plain-

---

[4]As we previously explained, we are generously construing the Plaintiff's Complaint as asserting that the Defendants' denied him equal protection of the laws. After reviewing the meager facts that the Plaintiff has provided, in support of this allegation, it is clear, however, that such a claim cannot survive. The Plaintiff alleges that other sex offender treatment residents, who were "sexually acting out," did not receive a reduction in their security rating, Complaint, at ¶21, and that one resident, who had been found guilty of a media violation, also did not receive a reduced security rating, Complaint, at ¶22. These allegations, however, merely show that individuals, who were charged with offenses different from that of the Plaintiff, were treated differently. Generally, though, the right to equal protection requires that the (continued...)

tiff's due process claim requires us to determine how the Plaintiff's status, as a civilly committed sexual offender, impacts upon the Constitutional protections afforded to him. As a result, before we consider the Defendant's Motion to Dismiss, as to the due process claim, we first address that issue.

In a recent case in this District, the Court considered the appropriate level of protection that is applicable to civilly committed individuals under the Fourteenth Amendment. See, Devillion v. Milczark, Civ. No. 01-617, Report and Recommendation (D. Minn. November 7, 2001), adopted (D. Minn. Decemember 21, 2001), attached as Exhibit 1 to Affidavit of David A. Rowley. In Devillion, the Court, in ultimately analogizing civilly committed individuals with pretrial detainees, noted that pretrial detainees are not subject to the same type of disciplinary sanctions that are "an inherent

---

[4](...continued)
Government treat similarly situated individuals in a similar manner. See, City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985). The Plaintiff has not alleged, that he was treated differently than a similarly situated resident. In fact, he has not provided any information about those other residents, or the severity of their purported wrongful acts, which would allow us to consider their punishments unequal to that of the Plaintiff, even if we assumed, which we may not, that they were similarly situated. Thus, in addition to the fact that the Plaintiff does not clearly state an equal protection claim on the face of his Complaint, he fails to allege sufficient facts to arguably show the application of the Equal Protection Clause. We, therefore, recommend that any claim, that the Defendants violated the Plaintiff's right to equal protection of the laws, be dismissed as failing to state a cognizable cause of action.

aspect of a prison sentence," because they had not been convicted of a crime, and therefore, that cases brought by pretrial detainees should not be analyzed under the familiar framework of Sandin v. Conner, 515 U.S. 472 (1995). Id. at 9.

The Court found the reasoning "equally applicable to civilly committed detainees" who, "like pre-trial detainees, are not serving prison sentences, and are therefore not automatically subject to the normal punitive sanctions that inevitably accompany prison sentences." Id. The Court further observed that it could not "find any good reason why civilly committed detainees should have broader due process rights than those guaranteed to pretrial detainees * * *," especially since civilly committed detainees are afforded more process prior to their commitment than pretrial detainees. Id. at 9 and n.2. Similarly, by implication, our Court of Appeals has applied the pretrial detainee standard to claims, by a civilly committed individual, involving an asserted violation of the right to due process. See, Nicolaison v. Milczark, supra at 597 (citing pretrial detainee case for the proposition that the defendant's actions did not violate the plaintiff's right to procedural due process).

We concur with the reasoning of Devillion, and note that the same reasoning was employed by our Court of Appeals when considering the appropriate constitutional standard to be applied to

claims, by a civilly committed person, that his constitutional right to be free, from the use of excessive force, had been violated. See, Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001). In its analysis, the Court recognized that the appropriate constitutional standard varied depending on the plaintiff's status: for arrestees, "the Fourth Amendment's 'objective reasonableness' standard control[led];" for pretrial detainees, an objective reasonable standard also controlled, although it was "grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment;" and for prisoners, the appropriate standard was "provided by the Eighth Amendment's prohibition of cruel and unusual punishment." Id. at 1060-61.

The Court determined, however, that the Eighth Amendment standard, which is applicable to convicted prisoners, would not be applicable to the claimant there, as he had been detained after being found not guilty by reason of insanity, "and thus he was not a 'prisoner' subject to punishment." Id. at 1061. The Court related that, although the claimant was not a prisoner, he was in the lawful custody of the State, and that his confinement "raised issues similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's opera-

tions." Id., citing Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989). Therefore, the Court concluded that the plaintiff's claims should be evaluated under the "standard usually applied to * * * claims brought by pretrial detainees." Id.

We find this reasoning persuasive, if not controlling. While the Plaintiff is not detained by reason of a criminal conviction, he has been lawfully detained by the State of Minnesota. As such, he does not have the status of either a free citizen, or a convicted inmate. We concur in the view that his position is most analogous to that of a pretrial detainee, since his lawful detention raises concerns about institutional safety, order, and efficiency. Therefore, we conclude that the Plaintiff is entitled to no more protection than is extended to pretrial detainees, and we examine his constitutional claims in that light. In doing so, however, we do not necessarily conclude that the Plaintiff is due a level of protection equal to that of the pretrial detainee, for we agree with the Court in, Devillion v. Milczark, supra at 9 n.2, that, "[i]f anything, civilly committed detainees probably are entitled to less due process protection than pretrial detainees, because civilly committed detainees have already received the benefit of a complete court trial before being confined, whereas pretrial detainees have usually had -- at most -- only the benefit of a probable cause hearing." In our analysis, we merely conclude

that, if the Plaintiff fails to state a claim upon which relief can be granted under the pretrial detainee standard, he would, a fortiori, fail to state a claim under any less protective standard which might reasonably be applied to a civilly committed sexual offender.

Turning to the Plaintiff's due process claim, in determining whether a law violates the right procedural due process, a reviewing Court's first step is to determine whether there is a protectible liberty or property interest at stake. See, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). Only if that threshold question is answered in the affirmative do we then inquire whether the procedures attendant to that deprivation were constitutionally sufficient. See, Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989).

In his Complaint, the Plaintiff did not expressly identify any property or liberty interests that were infringed by the Defendants' alleged violation of his right to due process of law. In the Memorandum of Law filed simultaneously with his Complaint, however, he claims that Minnesota Statutes Section 253B.18, Subdivision 15, created such a liberty interest. We further read his Complaint to assert a liberty interest in being free from punishment imposed by the State, such that the Defendants could not re-

duce his security rating, or restrict his privileges, without affording him the procedural protections of Due Process.

We turn first to the Plaintiff's claim, that he has a liberty interest arising under Minnesota Statutes Section 253B.18, Subdivision 15, which governs discharge from commitment for those individuals who have been civilly committed as mentally ill and dangerous, including sexually dangerous persons. Specifically, the Statute provides as follows:

> A mentally ill and dangerous patient shall not be discharged unless it appears to the satisfaction of the commissioner, after a hearing and a favorable recommendation by a majority of the special review board, that the patient is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision. In determining whether a discharge shall be recommended, the special review board and commissioner shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community. If the desired conditions do not exist, the discharge shall not be granted.

Minnesota Statutes Section 253B.18, Subdivision 15 (2001).

According to the Plaintiff, any punishment implicates the liberty interests created by the Statute, because that punishment might ultimately affect his ability to be discharged. However, in Sandin v. Connor, 515 U.S. 472 (1995), the United States Supreme Court considered a similar argument from a prisoner with an indeterminate

sentence. The Court explained that "[t]he decision to release a prisoner rests on a myriad of considerations," and noted that "the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record." Id. at 487. Thus, the Court concluded that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." Id.

The same reasoning applies here, even though the Plaintiff is a civilly committed detainee, rather than a prisoner as was the plaintiff in Sandin. Minnesota Statutes Section 253B.18, Subdivision 15, sets forth a number of discharge criteria, and the Statute sets forth procedural protections which require that the Plaintiff's Petition for Release be reviewed by a Special Review Board, and the Commissioner of Human Services, and allows for an appeal to the Supreme Court Appeal Panel. Minnesota Statutes Section 253B.18, Subdivision 4c; Minnesota Statutes Section 253B.19. The numerous criteria, which are considered in determining the Plaintiff's eligibility for release, and the considerable procedure that will be provided to the Plaintiff upon such an application, draw us to conclude that the referenced Statute does not afford the Plaintiff a protected liberty interest that would entitle him to the

procedural protections of the Due Process Clause any time he is punished.

We also construe the Plaintiff's Complaint as asserting a liberty interest in being free from punishment. As we have explained, however, the Plaintiff is not entitled to Due Process rights greater, or broader, than those guaranteed to pretrial detainees. As such, in considering the Plaintiff's Procedural Due Process claims, which arise from a liberty interest in being free from punishment, we turn to the Supreme Court's decision in Bell v. Wolfish, supra at 535, where the Supreme Court held that pretrial detainees could not be "punished" without being afforded the procedural protections of Due Process. In that opinion, however, the Supreme Court explained that not every sanction imposed against a pretrial detainee could be considered punishment that would give rise to Due Process concerns. Id. at 539, n. 21, ("There is, of course, a de minimus level of imposition with which the Constitution is not concerned."), quoting Ingraham v. Wright, 430 U.S. 651, 674 (1977). Therefore, "if a particular condition or restriction of a pretrial detainee is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Smith v. Copeland, 87 F.3d 265, 267 (8th Cir. 1996).

Having considered the sanctions imposed upon the Plaintiff, as he has identified them in his Complaint, we are unable to find that

these "punishments" exceed the de minimus threshold. According to the Plaintiff, he was placed on "Level A restrictions" -- which he describes as allowing him to "leave his sleeping room for [ten] minutes out of every hour for fresh air breaks, and forfeit[ing] other institution liberties while the restrictions [are] in place, Complaint, at ¶12, and he received a decrease in his security rating." While the Plaintiff was, undoubtedly, displeased by these additional restraints on his conduct, we are unable to conclude that these restrictions are sufficient to support a Due Process claim. See, e.g., Smith v. Copeland, supra at 268 (determining that a pretrial detainee's placement in segregated confinement for four days, in which, after his toilet overflowed, "he was 'made to endure the stench of [his] own feces and urine'" did not amount to denial of due process of law, because it constituted no more than "a de minimis imposition"); DeVillion v. Milczark, supra at 10-11 (concluding that "[five] days level room restriction" amounted to no more than "a de minimis imposition"). Each of the Plaintiff's restrictions was based upon a legitimate institutional concern, such as security, health, safety and order, or was a valid treatment interest of the facility. Therefore, as those restrictions did not trigger the protections of the Due Process Clause, the Plaintiff had no right to either pre- or post-deprivation process and, even if true, the failure of the Defendants to provide

the Plaintiff with a Hearing, before a neutral board which was not composed of his treatment providers, and to afford him notice so as to allow him to prepare a defense and to call witnesses, did not constitute a violation of the Plaintiff's Constitutional rights.[5]

---

[5]Even if the Plaintiff had established a constitutionally protected liberty or property interest, he has not shown that the procedures employed by the Defendants denied him Procedural Due Process. Under the rule set forth in Matthews v. Eldridge, 424 U.S. 319 1976), Courts are to consider the specific interest which the plaintiff asserts is being infringed, and then consider the likelihood that the procedures provided would result in an erroneous deprivation of that interest, whether additional procedures would have reduced that likelihood, and also consider the State's interest in providing the procedures that it has. Even if the Plaintiff did have a protected liberty interest, the requirements that the Plaintiff contends are necessary, in order to protect him from an erroneous deprivation, would not render the decisionmaking process more accurate.

The Plaintiff asserts that he should have had the right to an impartial decisionmaker, should have been provided the opportunity to prepare a defense, and should have been permitted to call witnesses in his defense. However, the availability of the grievance procedure, which the Plaintiff admits to having fully utilized, provided him with ample process. If those who made the determination at the Hearing were, in fact, biased, or if there was insufficient evidence to support their finding, that the Plaintiff had violated an institutional rule, then the Plaintiff would have ample opportunity to raise that complaint in a grievance. Further, the Program had a substantial interest in adhering to the procedures that it has provided. Given the treatment purposes which underlie the Program's existence, Program Staff must be able to enforce procedures and policies, which advance those purposes, without delay. If the Program were forced to find persons, outside of its staff, to conduct a Hearing, or to allow the Plaintiff all the rights akin to a Federal criminal Trial, prior to imposing restrictions, then the Program participant would be able to engage in behavior which is not only detrimental to his own treatment, but also to that of other Program participants, and could create a danger to
(continued...)

As such, the Plaintiff has failed to al-lege any liberty or property interest sufficient to invoke the pro-tections of the Due Process Clause and, consequently, his Complaint must be dismissed. Therefore, we recommend that the Defendants' Motion to Dismiss be granted in its entirety.

NOW THEREFORE, It is --

RECOMMENDED:

That the Defendants' Motion to Dismiss [Docket No. 12] be GRANTED.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 9, 2002,** a writing which specifically identifies those portions of the Report

---

(...continued)
the community. Therefore, even if the Plaintiff could assert a protected liberty or property interest, which had been implicated by the Defendants' actions, we would be compelled to conclude that the Program's procedures sufficiently protected his Due Process rights.

to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 9, 2002**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.